**POWELL v. KYLE, Former Acting Collector of Internal Revenue.**

No. 19204.

District Court, E. D. Pennsylvania.

Feb. 10, 1938.

J. Warren Brock and Edmonds, Obermayer & Rebmann, all of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., and J. Cullen Ganey, U. S. Atty., both of Philadelphia, Pa., and J. Leonard Lyons, Sp. Asst. to Atty. Gen., of Washington, D. C., for defendant.

MARIS, District Judge.

This is a suit against the former acting Collector of Internal Revenue at Philadelphia to recover income tax alleged to have been unlawfully exacted for the calendar year 1932. The parties waived a jury trial. From the evidence I make the following special findings of fact:

In his income tax return for the calendar year 1932, plaintiff reported a capital net loss in the amount of $18,263. $16,513 of that amount represented a loss claimed on the sale of $10,000 face amount of bonds of the Scranton, Montrose & Binghamton Railroad Company. This loss was disallowed by the Commissioner of Internal Revenue in his audit of the plaintiff's 1932 income tax return and as a result an additional income tax in the amount of $1,765.20 was assessed against the plaintiff for the year 1932 and was paid by him on November 7, 1934, with interest in the amount of $172.92, the total amount paid being $1,938.12. On May 3, 1935, plaintiff filed a claim for refund of that amount, which claim was rejected by the Commissioner on July 17, 1935.

The said $10,000 principal amount of Scranton, Montrose & Binghamton Railroad Company bonds were acquired by the plaintiff in 1921 at a cost of $16,500 and were sold through brokers on December 20, 1932, for the sum of $1, the costs of the sale being $14. The plaintiff had previously sold two lots of these bonds through the same brokers to the same purchaser, $10,000 in 1928 for the sum of $30, and $10,000 in 1931 for the sum of $1.

The Scranton, Montrose & Binghamton Railroad Company which issued the bonds went into receivership in 1930 and discontinued operations on July 20, 1931. The bonds were secured by a mortgage given to the Miners National Bank of Wilkes-Barre as trustee. The mortgage covered the part of the railroad extending from Factoryville to Montrose and as additional security $100,000 out of $1,200,000 of the bonds of the Northern Electric Street Railway Company were deposited with the trustee. The bonds of the Northern Electric Street Railway Company were secured by a mort-

gage on the part of the railroad from Scranton to Factoryville and Lake Winola and by a pledge of all of the stock of the Dalton Street Railway Company.

In 1931, the mortgage securing the Northern Electric Street Railway Company bonds was foreclosed, and the property secured thereby, including the stock of the Dalton Street Railway Company, was acquired by a bondholders' protective committee with which the bonds held by the Miners National Bank of Wilkes-Barre as trustee for the Scranton, Montrose & Binghamton Railroad Company bonds had been deposited.

The Dalton Street Railway Company owned in 1932 a large number of parcels of real estate and had other assets, including claims against the State of Pennsylvania, the City of Scranton, and the Abington Electric Company in large amounts. At the time of the trial of this case the Miners National Bank of Wilkes-Barre, as trustee for the Scranton, Montrose & Binghamton Railroad Company bonds, had on hand a fund of $13,314.96 and the bondholders' protective committee for the Northern Electric Street Railway Company bonds had on hand funds exceeding $8,600 in which the holders of the Scranton, Montrose & Binghamton Railroad Company bonds had an interest. In 1932 the Miners National Bank of Wilkes-Barre, as trustee for the latter bonds, claimed an interest in a fund derived from the sale of the personal property of the Scranton, Montrose & Binghamton Railroad Company and this claim was not finally dismissed by the court until 1933.

The bonds of the Scranton, Montrose & Binghamton Railroad Company had not become worthless prior to the year 1932 and did not become worthless at any time during the calendar year 1932.

### Discussion.

The sole question involved in this case is one of fact, whether the bonds which the plaintiff sold in 1932 had become worthless and so ascertained by him prior to the time of the sale. If they had, then plaintiff was not entitled to the capital net loss resulting from their sale which he claimed. If, however, as I have found from the evidence, the bonds had not become worthless by the time of the sale it follows that the plaintiff was entitled to the capital loss which he claimed and the additional tax assessed and collected from him should be refunded. It is clear from the evidence that there were still assets securing the bonds in 1932. It is quite true that the property then securing the bonds represented but a small fraction of their face amount. It was, however, enough to bar a finding of worthlessness. This being so, it is in my view immaterial that the bonds had no market value. West End Pottery Co. v. Commissioner, 7 B.T.A. 927. I accordingly reach the following conclusions of law:

The loss sustained by the plaintiff from the sale in 1932 of $10,000 of Scranton, Montrose & Binghamton Railroad Company bonds was an allowable capital net loss in determining the plaintiff's income tax liability for that year.

The additional income tax amounting to $1,765.20. and interest thereon of $172.92 assessed against and collected from the plaintiff on November 17, 1934, should be refunded.

I accordingly find in favor of the plaintiff and against the defendant in the sum of $1,938.12, with interest from November 17, 1934.